■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v SALVATORE GIARRIZZO, Respondent.—Order of the Supreme Court, New York County, rendered January 22, 1979, granting defendant's motion to suppress physical evidence, reversed, on the law and on the facts, and the motion denied. On November 15, 1978, Police Officer Cavallo and two other officers were

assigned to a "decoy operation" on 42nd Street between 7th and 8th Avenues. Between 8:00 and 8:30 P.M., Cavallo was standing in front of a "holster shop" looking into the inside of the store through the plate glass window. Cavallo observed three men, the defendant, his brother and one Mohr, in the store. Detective Abbate, one of the three "decoy" officers, who was observing from another point, noted that Mohr had a gun protruding from his waistband. As Cavallo continued to look inside the store, he saw defendant purchase an ankle holster. The three men exited from the holster shop and proceeded across the street to a Blimpie restaurant. The restaurant had no window or door. Its entire front was open. Mohr and defendant's brother proceeded into the restaurant followed by Abbate and the third officer. Defendant remained outside at the building line, with Cavallo a short distance away. As Mohr walked into the restaurant, he turned to a garbage can and Cavallo heard a thud. Cavallo saw Abbate reach into the garbage can and retrieve a gun. He then walked over to defendant. Before Cavallo said anything to him, defendant said to Cavallo, "That's it, they got the only gun. That's the only gun". As Cavallo was about to walk defendant into the Blimpie shop, he noted a bulge in the quilted vest worn by him. While the outline of the bulge was not that specifically attributable to a gun, Cavallo thought that it might be a gun. Accordingly, he grabbed the vest and felt something "hard and heavy". He then reached into the vest pocket and removed the gun. In recent months, the relationship of the purchase of a holster to a search has been before us on two separate occasions. In *People v Batista* (68 AD2d 515) we suppressed the search on the ground that although there might have been a reasonable basis for a street stop and inquiry, no inquiry was made. To compound the situation, the search did not immediately follow the arrest which was made without probable cause. In *People v Samuels* (68 AD2d 663) we held the search warranted. While the inquiry made was inconclusive, it was followed by certain suspicious actions. Here, the fact pattern was considerably stronger than was that in *Samuels*. Here we have (1) knowledge that a member of the trio, other than defendant, possessed a gun; (2) the purchase of a holster by defendant; (3) the discard of the weapon by Mohr and its immediate retrieval by Abbate; (4) the volunteered statement by defendant "That's it, they got the only gun. That's the only gun"; (5) the bulge in defendant's vest; and (6) Cavallo's act in grabbing for the bulge and feeling something "hard and heavy". For an experienced police officer, acting in a high crime area, these elements combined to create a reasonable suspicion which warranted action. Bearing in mind that the failure to act promptly might lead to a shootout on a street located in an area which is one of the busiest in the world at what was probably its busiest hour, we are impelled to the conclusion that the action of Officer Cavallo was reasonable and proper. Concur—Sullivan, J. P., Bloom, Lane, Lupiano and Ross, JJ.